**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 21-cr-190-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.   **THOMAS O'HARA, II,**
2.   KIMBERLY KAY DICK,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO COMPEL PRODUCTION**

---

The Government charges Defendant Thomas O'Hara, II with: (1) one count of conspiracy to distribute and possess with intent to distribute 50 grams and more of methamphetamine (actual) and 500 grams and more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii); (2) one count of possession with intent to distribute 50 grams and more of methamphetamine (actual) and 500 grams and more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii); (3) one count of possession with intent to distribute 100 grams and more of a mixture or substance containing a detectable amount of heroin, a schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i);

and (4) one count of possession with intent to distribute 40 grams and more of a mixture or substance containing a detectable amount of n-phenyl-n-[1–(2–phenylethyl)–4–piperidinyl] propanamide (fentanyl), a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi).  (ECF No. 51.)

This matter is before the Court on Defendant's Motion to Compel Production ("Motion"), filed on February 23, 2022.  (ECF No. 71.)  The Government responded on March 7, 2022.  (ECF No. 77.)  For the reasons set forth below, the Motion is granted in part and denied in part.

## I. LEGAL STANDARDS

There is "no general constitutional right to discovery" in criminal proceedings. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Here, Defendant requests discovery under Federal Rule of Criminal Procedure 16, and *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150, 153 (1972), and their progeny.

### A.    *Brady & Giglio*

"The Constitution, as interpreted in *Brady*, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995).  *Brady* requires disclosure only of evidence that is both favorable to the accused, and "material either to guilt or to punishment."  *Brady*, 373 U.S. at 87.  "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also United States v. Allen*, 603 F.3d 1202, 1215 (10th Cir. 2010).  A "reasonable probability," in turn, is a "probability sufficient to undermine confidence in

the outcome." *Bagley*, 473 U.S. at 682 (internal quotation marks omitted).

The Tenth Circuit also has stated that evidence is material if it "might meaningfully alter a defendant's choices before and during trial . . . [including] whether the defendant should testify." *Case v. Hatch*, 731 F.3d 1015 (10th Cir. 2013) (quoting *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (alterations in original; internal quotation marks omitted)). The Tenth Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994).

The Government bears the burden of producing exculpatory materials; a defendant has no obligation to first note that such materials exist. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached"); *United States v. Padilla*, 2011 WL 1103876, at *6 (D.N.M. Mar. 14, 2011). This obligation means that the Government must "volunteer exculpatory evidence never requested, or requested only in a general way." *Kyles*, 514 U.S. at 433.

In *Giglio*, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching Government witnesses, even if the evidence is not inherently exculpatory. 405 at 153; *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir. 2009) ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [State's] witnesses by showing bias and interest.'" (quoting *Bagley*, 473 U.S. at 676)).

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'"  *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975), *cert. denied*, 425 U.S. 905 (1976)); *accord United States v. Kraemer*, 810 F.2d 173, 178 (8th Cir. 1987) (explaining that the prosecution is not required "to search out exculpatory evidence for the defendant").  On the other hand, "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984).  "A prosecutor must disclose information of which it has knowledge and access."  *Padilla*, 2011 WL 1103876, at *7 (citing *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989)).  "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'"  *Id.* (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).  "A prosecutor does not have a duty, however, to obtain evidence from third parties." *Id.* (citing *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001) (observing that *Brady* does not oblige the government to obtain evidence from third parties)).

**B.    Rule 16**

Rule 16 provides that the court regulates discovery.  Fed. R. Crim. P. 16(d).  "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  Further, Rule 16(a)(1)(E) provides:

> (E) Documents and Objects.  Upon a defendant's request,

the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item it its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

"Rule 16 is 'broader than *Brady'* in that it mandates disclosure of any material information, whether exculpatory or not." *United States v. Smith*, 2017 WL 3172790, at *2 (D.N.M. May 16, 2017) (citation omitted). But "Rule 16 does not authorize a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition." *United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)).

A defendant bears the burden of making a *prima facie* showing of materiality. *See United States v. Garrison*, 2016 WL 8416755, at *3 (D. Colo. Sept. 22, 2016). Evidence is "material" under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, . . . or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks omitted, alterations in original) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)). The Eleventh Circuit has explained that under Rule 16(a)(1)(E)(i), an item

need not be disclosed unless the defendant demonstrates that it is material to the preparation of his defense. A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to

> the defense.  Rather, the defendant must make a specific
> request for the item together with an explanation of how it
> will be "helpful to the defense."  The defendant must "show"
> "more than that the item bears some abstract logical
> relationship to the issues in the case . . . .

*United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003) (internal citations,

quotations, and some alterations omitted).  "Although the materiality standard is not a

heavy burden, the government need disclose Rule 16 material only if it enables the

defendant significantly to alter the quantum of proof in his favor."  *Graham*, 83 F.3d at

1474 (alterations, citations, and internal quotation marks omitted).

## II.  ANALYSIS

In the Motion, Defendant asks the Court to compel the Government to

immediately produce the following categories of documents:

1. The full proffer reports of a confidential witness ("CHS 1"), Brandon
   Gerdis, and Kim Dick, as well as "any notes taken by any Government
   agents in connection with those proffers or documents reflecting crimes
   they have committed while working with the Government," including "any
   materials possessed by the Colorado Springs Police Department, the El
   Paso County Sheriff's Department, the Bureau of Alcohol, Tobacco,
   Firearms and Explosives ("ATF"), and the Colorado Department of
   Corrections";

2. "Documents in the possession of any Government agency that show why
   CHS 1 is so unreliable that it required mentioning in the affidavit in support
   of the arrest warrants that are in the possession of any Government
   agency";

3. "Documents that show what benefits (of any type) that CHS 1, Brandon
   Gerdis, or Kim Dick received from any Government law enforcement
   agency or attorney's office, whether it was explicitly in exchange for
   cooperation, and what either person provided in exchange for those
   benefits";

4. "Documents from the ATF (or any other Government agency allowing their
   agents to be ATF Task Force Officers, including the Colorado Department
   of Corrections) regarding the cultivation of CHS 1 as a resource, how

exactly CHS 1 came to tell her handlers she had information regarding [Defendant], and how CHS 1 decided to provide that information to the [United States Drug Enforcement Agency ('DEA')]"; and

5.    "Documents from the El Paso County Sheriff's Department and the Colorado Springs Police Department regarding the cultivation of Brandon Gerdis as a resource, whether or not he suffered any medical events and/or required any medical and/or other special attention upon his admission to the El Paso County Prison and/or before he was pulled therefrom by the Government agents, how exactly Mr. Gerdis communicated his desire to speak about [Defendant] to Government agents, whether or not the agents that interviewed him followed up on his allegations against all those named and the results of those investigations, a list of drugs that could affect mental processes that the jail dispensed to him before and after his interviews[,] including time dispensed, and records showing if he was held in administrative segregation or in a cell with enhanced observation during his time in jail."

(ECF No. 71 at 1–3.)

According to Defendant, the Government must produce these documents pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E) because they are material to his defense and are necessary for him to have a fair trial. (*Id.* at 3.) Defendant contends that his theory of the case is that "he is not guilty of the offenses charged because he did not knowingly possess the quantity of contraband the Government alleges" and that "[t]he cash, drugs, and guns the Government found are the responsibility of CHS 1 and Brandon Gerdis and were planted by them to settle their scores with [Defendant] and gain Government protection at the same time." (*Id.* at 3–4.) He argues that "[t]here is nothing in discovery that renders this theory implausible on its face" and that he will be denied a fair trial if he "cannot gather evidence that supports his case theory, especially when that evidence is held by the Government prosecuting him." (*Id.* at 9.) He further argues that the evidence requested is material because: (1) it will impeach critical Government witnesses, and (2) he is calling one or more of these

7

individuals as defense witnesses during trial.  (*Id.* at 5, 12.)

At a broad level, Defendant's requests fall into two categories of materials: (1) proffer reports of CHS 1, Gerdis, and Dick, as well as notes taken by Government agents in connection with those proffers (ECF No. 71 at 1 (request 1)); and (2) potential impeachment evidence relating to CHS 1, Gerdis, and Dick (*id.* at 1–3 (requests 1–5)). The Court considers each category of requests below.

## A.      Request for Proffer Reports and Related Notes

The Government represents that it has already provided to Defendant the full reports of interviews related to this investigation with CHS 1 and Gerdis even though it does not intend to call either individual as a witness at trial.[1]  (ECF No. 77 at 12.)  It further represents that there is no indication that any additional notes related to the interviews contain exculpatory information which is not in the reports and that there is no suggestion that the reports are inaccurate summaries of the interview.  (*Id.*) According to the Government, because the individuals in question will not be Government witnesses at trial, there is no way any additional notes fall under the Government's disclosure obligations pursuant to the Jencks Act or Federal Rule of Criminal Procedure 26.2.  (*Id.*)  The Court agrees.

To the extent that the Government does not intend to call CHS 1 or Gerdis as witnesses at trial, their proffer reports and related investigation notes are not subject to disclosure pursuant to the Jencks Act or Rule 26.2.  As such, the portion of the Motion

_____

[1] The Government represents that it has also provided the full proffer reports for two sources of information, SOI1 and SOI2, even though the Government does not intend to call these individuals as witnesses at trial either.  (ECF No. 77 at 12.)  However, because Defendant does not request documents relating to these individuals (*cf.* ECF No. 70 at 1–5), the Court will

requesting the full proffer reports and associated notes for CHS 1 and Gerdis is denied as moot.

However, the Government does not address whether proffer reports for Kim Dick exist or whether Kim Dick will be a Government witness at trial.  (*See generally* ECF No. 77.)  To the extent that: (1) it intends to call Kim Dick as a witness at trial, and (2) the proffer reports for Kim Dick are discoverable under Rule 16 and/or the Jencks Act, the Government is directed to provide those reports to Defendant at such time as it makes its remaining Rule 16 disclosures and/or disclosures under the Jencks Act.

But while the question of whether "handwritten, informal, or rough interview notes taken by a government agent during an interview or criminal investigation constitutes producible Jencks Act 'statements'" is "unresolved among the circuits," the Tenth Circuit has concluded that the "Government is not required under the Jencks Act to produce an agent's 'informal' description of the testimony of several witnesses."  *United States v. Smaldone*, 544 F.2d 456, 461 (10th Cir. 1976) (citing *United States v. Swindler*, 476 F.2d 167 (10th Cir. 1973), *cert. denied*, 414 U.S. 837 (1973)).  Moreover, "there is no discreet right to the . . . production of handwritten notes that have been incorporated into final reports or statements."  *United States v. Wright*, 2012 WL 4049826, at *3 (D. Colo. Sept. 13, 2012).

As such, Defendant's request for Government notes regarding Kim Dick's proffers, if any, is denied.

## B.     Requests for Impeachment Evidence

The Government argues that it has no obligation to gather and produce

---

not consider documents relating to these individuals further.

impeachment evidence for individuals that it does not intend to call as Government witnesses at trial.  (ECF No. 77 at 14.) The Court agrees.

To the extent that Defendant suggests that the Government has an obligation to search its records for impeachment evidence for *defense* witnesses, the Court notes that Defendant cites no authority in support of his request.  (*See generally* ECF No. 71.) To the contrary, it is well settled that no such obligation exists.  *See, e.g.*, *United States v. Garcia-Martinez*, 730 F. App'x 665, 678–79 (10th Cir. 2018) (noting that there is no "controlling precedent" that would oblige the Government under *Brady* "to disclose information that is exculpatory—in a purely impeachment sense—with respect to a *defense* witness" (emphasis in original)); *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (noting that "both the discovery order and *Giglio* apply only to impeachment information relating to a government witness," and that they were "inapplicable because the government did not ever call" the witness the defendant hoped to impeach); *United States v. Kimley*, 60 F. App'x 369, 372 (3d Cir. 2003) ("[T]here is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness.").  As such, Defendant's request for impeachment evidence relating to non-Government witnesses is denied.

Regarding Defendant's request for impeachment evidence relating to anticipated Government witnesses, the Government represents as follows:

> With regard to any cooperating defendants or witnesses who will be called as witnesses during the [G]overnment's case in chief at trial, the [G]overnment respectfully responds that it does intend to provide their identities and any information or evidence which may be used to impeach or attack the

> credibility of those witnesses, but requests to be able to do
> so, pursuant to a protective order, 45 days prior to trial in this
> case.
>
> . . .
>
> The [G]overnment asks to delay these disclosures until
> closer to trial in the interest of the witnesses' safety and to
> avoid disclosing their identities if the [D]efendant ultimately
> wishes to resolve his case through a plea agreement.

(ECF No. 77 at 14–15.)

While the undersigned recognizes the importance of witness safety and maintaining the confidentiality of an informant's identity, the Court must balance those considerations against the Defendant's ability to mount an effective defense and adequately prepare pretrial motions.  Accordingly, the Court directs the Government to produce these materials pursuant to the Protective Order attached as an exhibit to this Order no later than 60 days before trial.

Finally, to the extent Defendant seeks evidence which he contends falls within *Brady* and its progeny, the request is denied as moot.  The Court assumes that the Government is aware of its *Brady* obligations and is complying with those obligations.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendant's Motion to Compel Production (ECF No. 71) is GRANTED IN PART and DENIED IN PART as set forth herein.

Dated this 29th day of April, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge